# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GASPLUS, L.L.C. | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 03-1902 (RMC) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.* | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

The fundamental question in this lawsuit is whether the Department of the Interior's ("DOI") Bureau of Indian Affairs ("BIA") legitimately declared that a management contract between Plaintiff GasPlus, L.L.C. and the Nambe Pueblo Indian Tribe was never legally valid. Presently pending before the Court is Defendants' motion to dismiss the individual Defendants — Robert D. Baracker, BIA's former Southwest Regional Director, and Aurene M. Martin, DOI's former Acting Assistant Secretary for Indian Affairs — who, respectively, declared the contract invalid and upheld that decision on appeal and who, in so doing, allegedly violated GasPlus's due process rights. In the face of these Defendants' motion to dismiss, GasPlus acknowledges that the Court does not have personal jurisdiction over Mr. Baracker. The complaint against him will therefore be dismissed without prejudice. The Court also concludes that *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), does not provide a basis for the suit against Ms. Martin because other avenues of relief are available to GasPlus. Thus, the complaint against her will also be dismissed.

# I.  FACTUAL BACKGROUND

Under former New Mexico law, bulk distributors of gasoline could avoid the state's excise tax by selling their gasoline to a Registered Indian Tribal Distributor and then buying the gasoline back at a slightly higher price.  Third Am. Compl. ¶ 12.  This feature of the tax law provided New Mexico's Indian tribes with an obvious business opportunity.  In February 2001, Nambe Pueblo entered into a Management Agreement with GasPlus in which they agreed that GasPlus would manage just such a gas distribution business for the tribe.  *Id.* ¶ 14; Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at p. 2.  The business was officially owned by the Nambe Pueblo Development Corporation ("NPDC"), a federally chartered tribal business corporation.  Third Am. Compl. ¶¶ 12-13.  The Management Agreement was reached at a time when the NPDC did not have a Board of Directors, so it was approved and executed by the Nambe Pueblo Tribe itself, the sole shareholder of NPDC.  *Id.* ¶ 15.  Approximately one year later, the Nambe Pueblo's new Governor, Tom Talache, Jr., requested that the BIA declare the Management Agreement invalid and void on the grounds that it had not been approved by the Secretary of the Interior pursuant to 25 U.S.C. § 81.  *Id.* ¶ 19.  That section of the law provides: "No agreement or contract with an Indian tribe that encumbers Indian lands for a period of 7 or more years shall be valid unless that contract or agreement bears the approval of the Secretary" or her designee.  25 U.S.C. § 81(b).

On February 7, 2002, BIA's Regional Director, Mr. Baracker, declared the Management Agreement legally invalid allegedly without notice to, or consultation with, GasPlus.  Third Am. Compl. ¶ 21.  Mr. Baracker then sent a Decision Letter to GasPlus ordering it to "vacate the premises of [NPDC] terminal facility immediately" and to "return all petty cash at the terminal, keys to the premises, and other items that would give GASPLUS employees access or control over

the premises or facilities." Pl.'s Resp. at 2.[1]  The Decision Letter further ordered that "GASPLUS must return all proceeds of the gas distribution business generated under this agreement" and to "repay the NPDC any monies taken in management fees during the past year." *Id.*  The decision was stated to be "final and hereby made immediately effective under 25 C.F.R. § 2.6(a) in order to protect the tribal trust resources." *Id.*  In reliance on the Decision Letter, the Nambe Pueblo issued an Ex Parte Custody and Temporary Restraining Order on February 11, 2002, to obtain custody of any records developed by GasPlus relating to the Management Agreement and to prevent GasPlus from removing any funds from its bank accounts. *Id.* at 3.

On February 21, 2002, Mr. Baracker advised GasPlus that — contrary to the draconian terms of the Decision Letter — his "February 7 decision was not immediately effective and that the administrative appeal provisions of 25 C.F.R. Section 2 apply to Section 81 determinations." *Id.* at 2-3.  GasPlus immediately appealed the Decision Letter, but Ms. Martin affirmed Mr. Baracker's conclusions in all respects, including Mr. Baracker's order that GasPlus "vacate[e] the premises, transfer[ ] the books and records of the business to the Pueblo or NPDC, and return[ ] all proceeds and management fees to the Pueblo or NPDC." *Id.* at 3.

Three months after Ms. Martin's decision, GasPlus filed this lawsuit against DOI seeking review of her decision under the Administrative Procedures Act, 5 U.S.C. §§ 701-706 ("APA").  GasPlus eventually amended the complaint to add Mr. Baracker and Ms. Martin as

---

[1] GasPlus's brief frequently cites to and quotes from documents outside the Third Amended Complaint, such as Mr. Baracker's Decision Letter, that have never been provided to the Court. Because those documents are incorporated into the Third Amended Complaint, the Court may properly consider them. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). And because Defendants have not objected to GasPlus's characterization of these documents, the Court will assume for purposes of deciding this motion that those characterizations are accurate.

individual defendants on the theory that their decisions had violated GasPlus's constitutional right to due process of law.  Third Am. Compl. ¶¶ 53-57.  A motion to dismiss Mr. Baracker and Ms. Martin has now been fully briefed.

## II.  LEGAL STANDARDS

### A.     Personal Jurisdiction

Under D.C.'s long-arm statute, the Court may exercise personal jurisdiction over a person as to a claim for relief arising from the person's

> (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a).  "This provision is given an expansive interpretation that is coextensive with the due process clause."  *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (internal quotation omitted).  Thus, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry."  *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

Under the due process clause, Defendants are subject to personal jurisdiction in this Court if they purposefully established "minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws."  *Asahi Metal*

*Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988).  In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The plaintiff "carr[ies] the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over the defendants."  *Murphy v. PriceWaterhouseCoopers LLP*, 357 F. Supp. 2d 230, 242 (D.D.C. 2004).  "[T]he general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts."  *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).

**B.      Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences therefrom in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).  The court need not, however, accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In deciding a 12(b)(6) motion, the Court may typically consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Chao*, 226 F. Supp. 2d at 196 (citation omitted).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.  ANALYSIS

The primary issue in this Motion to Dismiss is whether GasPlus can state a *Bivens*-type cause of action against Mr. Baracker and/or Ms. Martin for alleged due process violations that those Defendants committed in the course of voiding the Management Agreement pursuant to their authority under 25 U.S.C. § 81.  Before reaching that issue, however, the Court must address its jurisdiction to hear any claim against Mr. Baracker.

### A.    Personal Jurisdiction Over Mr. Baracker.

Defendants argue that the Court lacks personal jurisdiction over Mr. Baracker because the claim for relief does not arise from Mr. Baracker's activities in the District of Columbia and he has insufficient contacts with the District of Columbia to make general jurisdiction in this venue appropriate.  Def.'s Mem. of P&A In Supp. of Mot. to Dismiss ("Def.'s Mem.") at 29; *see Int'l Shoe*, 326 U.S. at 316; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).  GasPlus concedes that, at the present time, it lacks sufficient information to assert facts upon which this Court could base personal jurisdiction over Mr. Baracker.  Pl.'s Resp. at 25.  Accordingly, the Court will dismiss without prejudice all claims against Mr. Baracker for lack of personal jurisdiction.  *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998) ("'dismissals that do not reach the merits because of a lack of jurisdiction . . . must be considered to be without prejudice'") (quoting 9 Wright & Miller, *Fed. Practice & Procedure* § 2373 at 406).

### B.    *Bivens* Claim Against Ms. Martin.

Defendants further argue that GasPlus fails to state an actionable *Bivens* claim against Ms. Martin.  They contend that *Bivens* does not provide a cause of action against individual federal

government employees for constitutional violations that flow from agency decision-making, and that the Court should decline the invitation to create such a claim.  Def.'s Mem. at 6.

    1. *Did Ms. Martin violate the Constitution?*

    Before deciding whether *Bivens* provides a cause of action on these facts, the Court must determine whether GasPlus has stated a constitutional violation at all.  *See Sloan v. Dep't of Housing & Urban Dev.*, 231 F.3d 10, 18-19 (D.C. Cir. 2000).  GasPlus's asserts that Ms. Martin violated its due process rights by affirming Mr. Baracker's decision, which lacked findings of fact and was reached without notice to GasPlus and without providing GasPlus a meaningful opportunity to be heard, and thereby wrongfully deprived GasPlus of its interest in certain property.  Third Am. Compl. ¶¶ 38, 55.  Defendants respond that no constitutional violation could have occurred because, even assuming that Ms. Martin took such actions, GasPlus was never actually deprived of any property.  Def.'s Mem. at 21.  GasPlus alleges, however, that Ms. Martin's actions deprived it of the benefits of complete performance of the Management Agreement and empowered the Nambe Pueblo to issue an injunction requiring GasPlus to produce certain records and refrain from using any funds in its bank accounts.  Pl.'s Rep. at 6.

    Whether these allegations state a due process violation is a close question.  GasPlus's due process theory is at least plausible.  *See Mullane v. Cont. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that due process requires notice and an opportunity to be heard in any proceeding that results in the deprivation of a property interest); *see also Small v. United States*, 136 F.3d 1334, 1337-38 (D.C. Cir. 1998) (same).  While it is true that Ms. Martin herself never deprived GasPlus of any property, her decision did purport to annul GasPlus's interest in the Management Agreement.  Moreover, the Nambe Pueblo seized GasPlus's bank accounts as a result of allegedly

unlawful actions that were later ratified by Ms. Martin.  The attenuated causal nexus between Ms. Martin's conduct and the ultimate deprivation of GasPlus's property rights complicates the due process analysis, but the Court chooses not to resolve that thorny question now because it concludes that, even assuming that GasPlus has alleged a constitutional violation, it fails to state a claim against Ms. Martin under *Bivens*.

> 2.    *Extension of Bivens to provide a cause of action to GasPlus.*

The crux of GasPlus's theory behind its *Bivens* claim is that Ms. Martin was acting beyond the scope of her authority as Assistant Secretary for Indian Affairs when she ordered GasPlus to disgorge its profits and vacate tribal land, thereby placing her actions outside the scope of judicial review under the APA.  Pl.'s Resp. at 6-7.  As a result, GasPlus asserts that it has no ability to redress her unlawful conduct other than a common-law action under *Bivens*.  *See id.*  Indeed, there seems to be no dispute that Ms. Martin lacked statutory authority to order GasPlus to disgorge its profits or forfeit any interest in tribal land.  *See* Def.'s Mem. at 4-5.  Thus, the Court will decide the *Bivens* question based on the assumption that Ms. Martin's "order" was legally unsanctioned.

In *Bivens*, the Supreme Court held that the victim of an alleged Fourth Amendment violation could assert a common-law claim for damages in federal court under 28 U.S.C. § 1331 when there were no apparent alternative remedies and "no special factors counseling hesitation in the absence of affirmative action by Congress."  403 U.S. at 396.  While the Supreme Court has expanded *Bivens* to provide causes of action in different contexts,[2] since 1980 the Court has

---

[2]  *See Davis v. Passman*, 442 U.S. 228 (1979) (finding that a congressional employee could maintain a *Bivens*-type suit under the Fifth Amendment arising from discharge); *Carlson v. Green*, 446 U.S. 14 (1980) (allowing *Bivens*-type action for alleged violations of Eighth Amendment's cruel and unusual punishments clause).

"consistently refused to extend *Bivens* liability to any new context or new category of defendants."

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 67, 68 (2001).  Most specifically, "[w]hen the design

of a government program suggests that Congress has provided what it considers adequate remedial

mechanisms for constitutional violations that may occur in the course of its administration, [the

Supreme Court has] not created additional *Bivens* remedies."  *Schweiker v. Chilicky*, 487 U.S. 412,

422 (1988); *see also Bush v. Lucas*, 465 U.S. 367 (1983) (refusing to create a *Bivens* remedy to

supplement the Civil Service Reform Act for an employee allegedly demoted in retaliation for First

Amendment-protected speech).

Here, the question is whether there is a comprehensive statutory scheme that is

designed to deal with constitutional violations of the type allegedly committed by Ms. Martin, or

whether the Court needs to fashion a new common-law remedy to address such violations.  Without

doubt, the APA provides a remedy for "agency action" that is "contrary to constitutional right,

power, privilege, or immunity."  5 U.S.C. § 706(2).  The statute defines "agency action" as "the

whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof,

or failure to act."  *See* 5 U.S.C. § 706 (incorporating definition contained in 5 U.S.C. § 551(13)).

The APA "provides specifically not only for review of '[a]gency action made reviewable by statute'

but also for review of 'final agency action for which there is no other adequate remedy in a court.'"

*Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (quoting 5 U.S.C. § 704).  Thus, if Ms. Martin's

allegedly unconstitutional conduct amounted to "agency action," it is subject to judicial review under

the APA and the creation of a new *Bivens* remedy would be inappropriate.

Ms. Martin's authority to review Mr. Baracker's decision voiding the Management

Agreement was expressly authorized under 25 C.F.R. § 2.4.  Although appeals from decisions of

BIA Area Directors are generally directed to the Interior Board of Indian Appeals ("Board"), see 25 C.F.R. § 2.4(e), the Assistant Secretary for Indian Affairs may decide to assume jurisdiction over any appeal before the Board and render a final decision, see 43 C.F.R. § 4.5. Thus, Ms. Martin's decision to affirm Mr. Baracker's conclusions was clearly authorized by statute and was clearly a "denial" of "relief" that fits within the statutory definition of agency action. *Cf. W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1054-55 (10th Cir. 1993) (holding that the Board's denial of an appeal from the decision of an Area Director was "agency action" reviewable under the APA).

GasPlus does not disagree that the APA allows judicial review of Ms. Martin's decision that the Management Agreement was void; rather, it argues that Ms. Martin's further actions — her "order" that GasPlus disgorge its profits and forfeit the right to continuing performance under the Management Agreement — were beyond the scope of her authority and therefore did not constitute legitimate agency action reviewable under the APA. Pl.'s Resp. at 6-7. Although the statutory definition of agency action specifically includes "orders," there is at least an arguable ambiguity regarding the APA's applicability if the "order" in question was patently beyond the agency official's authority.

While there is no controlling D.C. Circuit case on this precise issue, the Court finds instruction in *Dart v. United States*, 848 F.2d 217 (D.C. Cir. 1988). In that decision, the D.C. Circuit addressed whether a court could, under the APA, review the Secretary of Commerce's unauthorized reversal of an ALJ's decision despite finality clauses in the agency statute that seemingly foreclosed judicial review of the Secretary's decision. *Id.* at 218-19. The D.C. Circuit held that because the Secretary's conduct was unauthorized under the agency statute, the finality clauses did not apply and judicial review was appropriate under the APA. *Id.* at 221. The court reasoned that under well-

settled precedent "[j]udicial review is favored when an agency is charged with acting beyond its authority." *Id.*; *see also id.* at 223 (observing that "the presumption of judicial review is particularly strong where an agency is alleged to have acted beyond its authority" because "'Congress established courts to adjudicate cases and controversies as to claims of infringement of individual rights whether by unlawful action of private persons or by the exertion of unauthorized administrative power.'") (quoting *Stark v. Wickard*, 321 U.S. 288, 310 (1944)).

The reasoning employed in *Dart* is relevant here because it contradicts GasPlus's argument that Ms. Martin's orders were "not reviewable under the APA" because they were "outside the scope of agency action . . . ." Pl.'s Resp. at 7. The mere fact that an agency official takes some action that is not authorized by statute does not mean that it ceases to be an "agency action" for purposes of the APA. That is not to say that an act totally outside the realm of agency action would be reviewable under the APA. But when the action in question is at least nominally part of an agency official's statutory duties, it is subject to judicial review pursuant to 5 U.S.C. § 702. *See Dart*, 848 F.2d at 221. The Court concludes, therefore, that Ms. Martin's overreaching "order" was agency action for purposes of the APA.

This conclusion is fatal to GasPlus's *Bivens* claim because courts should not create a cause of action under *Bivens* when a statutory scheme "suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration . . . ." *Chilicky*, 487 U.S. at 423. Through the APA, Congress has contemplated that agency actions may violate constitutional rights and has provided a certain set of procedures and remedies to address such situations. *See* 5 U.S.C. § 706(2) (providing certain remedies of agency action is found to be "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance

with law," or "contrary to a constitutional right.") Because review of Ms. Martin's "order" is available under the APA — even if her action was technically "unauthorized" — there is no occasion to establish a *Bivens* remedy.  *See, e.g.*, *Sloan v. Dep't of Housing & Urban Dev.*, 231 F.3d 10, 19 (D.C. Cir. 2000) (stating in dictum that "that a *Bivens* action may be foreclosed where the possibility of judicial review under the APA, along with other 'statutes, executive orders and regulations,' provides a meaningful remedy.") (quoting *Krodel v. Young*, 748 F.2d 701, 712-13 & 712 n.6 (D.C. Cir. 1984)); *see also Maxey v. Kadrovach*, 890 F.2d 73, 75-76 (8th Cir. 1989) (holding that plaintiff could not assert a *Bivens* claim based on the termination of his employment at a VA medical center because the APA provided an adequate means of relief).  Accordingly, GasPlus's cause of action against Ms. Martin in her individual capacity will be dismissed for failure to state a claim.

### C.    **Defendants' Other Arguments**.

Defendants also argue that GasPlus's claims against Ms. Martin (and Mr. Baracker) are subject to dismissal because they are barred by absolute and/or qualified immunity.  Def.'s Mem. at 13-19.  Because the Court concludes that *Bivens* does not provide GasPlus with a viable cause of action against Ms. Martin in her individual capacity, it need not address Defendants' immunity arguments.  Nonetheless, the Court wishes to make clear, lest Defendants repeat the argument at some later stage in this action, that there is no merit to the contention that Ms. Martin is entitled to absolute immunity.

Defendants argue that Ms. Martin's review of Mr. Baracker's decision was a quasi-judicial function.  In order to establish absolute immunity on that theory, the proceedings in question must meet the criteria set forth in *Butz v. Economou*, 438 U.S. 478, 513 (1978), including that they were adversarial in nature, conducted before a trier of fact free from political influence, and provided

the parties an opportunity to present evidence.  The proceedings in question here — and Ms. Martin's role in them — come nowhere close to satisfying the *Butz* factors.  None of the necessary "characteristics of the judicial process" were present.  *Id.*  Because Mr. Baracker failed to allow GasPlus to participate in the process which led to his Decision Letter, the proceedings were anything but "adversary in nature."  *Id.*  Ms. Martin had authority over a single issue — whether the Management Agreement had been properly approved — that required no task approaching adjudication.  Moreover, as the Acting Assistant Secretary for Indian Affairs, Ms. Martin was not "insulated from political influence."  *Id.*  And it further appears that GasPlus was not allowed to present its case or submit any evidence into the record.  On these facts, the Court cannot find that Ms. Martin performed a quasi-judicial function entitling her to absolute immunity.

## IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss the claims against Mr. Baracker for lack of personal jurisdiction.  The Court further concludes that GasPlus has failed to state a *Bivens* action against Ms. Martin.  Her demand that GasPlus disgorge its profits and forfeit its interest in Nambe Pueblo property, even if unauthorized, was "agency action" subject to judicial review under the APA.  Since GasPlus has a statutory remedy, a *Bivens* action is unnecessary.  Accordingly, Defendants' Motion to Dismiss will be granted.  A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: December 8, 2006